IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| Maersk A/S, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No.: |
| v. § | |
| § | IN ADMIRALTY, Rule 9(h) |
| Unifeeder A/S, § | |
| § | |
| Defendant, and § | |
| § | |
| DnB NOR Bank ASA § | |
| CMA CGM Logistics USA LLC § | |
| Hapag-Lloyd (America) LLC § | |
| Hamburg Sud North America, Inc. § | |
| "K" Line America, Inc. § | |
| Ocean Network Express (North America) § | |
| Inc., § | |
| § | |
| Garnishees. § | |

**VERIFIED COMPLAINT WITH REQUEST FOR ISSUE OF**
**<u>PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT</u>**

Maersk A/S ("Maersk") sues Unifeeder A/S ("Unifeeder") *quasi in rem* pursuant to Supplemental Rule B for Certain Admiralty and Maritime Claims, in causes of breach of maritime contracts, requesting the issue of writs of maritime attachment and garnishment including against Garnishees and stating as follows:

**<u>Jurisdiction and Venue</u>**

1. This is an action within this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and is an admiralty or maritime claim within Fed. R. Civ. P. 9(h), for breach of maritime contract.

2. Venue is proper in this District because the Garnishees are within the meaning of Supplemental Rule B located, can be found, and/or can be served with process in this District, and that accordingly Defendant's property is or soon will be in this District.

3. Defendant cannot be found in this District within the meaning of Supplemental Rule B.

4. Maersk brings this action to secure claims which it has brought or will bring in the High Court, London pursuant to maritime contract with Unifeeder (the Global Agreement), referred to herein.

## The Parties

5. Maersk is a corporation duly organized under the laws of Denmark, and by contract with Feedertech Pte. Ltd., to which Unifeeder is the successor of liabilities placed and entrusted cargo ("Cargo") to and aboard the M/V ELREEDY STAR ("Vessel"), which Feedertech operated or chartered.

6. Unifeeder (collectively herein, Unifeeder and Feedertech) is a Denmark corporation which operates and charters ocean container vessels for feeder service, contracting for and receiving containerized cargo from other ocean container carriers such as Maersk, to transport ocean containers to ports not otherwise served by those other ocean container carriers.

7. Garnishees are entities which as set out herein are located and do business in this District, and by information and belief do business with Unifeeder and therefore owe accounts to Unifeeder.

## Facts

8. Maersk and Unifeeder through Feedertech agreed in a Global Agreement for the carriage of containerized cargo by vessels which Feedertec (and through it, Unifeeder) operated or chartered (the "Global Agreement").

9. Pursuant to the Global Agreement, Unifeeder provided transport services to Maersk for the transportation of containers from Jeddah, Saudi Arabia to Port Sudan.

10. On November 7, 2021, the Vessel departed from Jeddah at 13:30 hrs local time ("LT") bound for Port Sudan. At 15:00 hrs LT, the Master recorded that 43 containers had been lost over the side of the Vessel and 2 containers were hanging off the side of the Vessel, which were also eventually lost (the "Incident"). Of the 45 containers which were lost, 41 of those containers were carried on behalf of Maersk (the "Containers").

11. After the Incident, the Vessel proceeded to Port Sudan where the Vessel was all fast on November 11, 2021. All of the affected Containers were carried in the Vessel's cargo bay no. 14. The Containers were then the subject of a recovery and salvage operation.

12. The receivers of the cargo carried under the Bills of Lading have threatened to commence proceedings against Maersk. One of the receivers commenced court proceedings against Maersk in the Sudanese Courts, contrary to the Law and Jurisdiction Clause in the Bills of Lading issued by Maersk (collectively, "Cargo Claims").

13. The Incident was caused by a negligent failure on the part of the sub-contractors of Unifeeder to properly stow, lash and secure the Containers which were carried on board the Vessel in cargo bay no. 14.

14. The Global Agreement governs the relationship as between Unifeeder and Maersk including the liabilities that arise out of the Incident.

15. Plaintiff's claims arise primarily from losses suffered under the Bills of Lading issued by Maersk and the subsequent Cargo Claims. The Claims also comprise expenses arising out of the recovery and disposal of the Containers.

16. Pursuant to the Global Agreement, Unifeeder must indemnify and hold harmless Maersk from any claim or proceedings brought against Maersk incurred either as a consequence of any act or default of Unifeeder or any entity who performed or was engaged to perform any part of Unifeeder's obligations under the Global Agreement. The stevedores who secured the containers in bay no. 14 were engaged to perform the services under the Global Agreement on behalf of Unifeeder.

17. The total value of the cargo – in the Containers (collectively, "Containers") lost under the Bills of Lading issued by Maersk for carriage by Unifeeder aboard the Vessel has yet to be determined, however Maersk have so far been notified of Cargo Claims totaling $2,219,165.72.

18. In addition to the indemnification/settlement of the Cargo Claims, under the Bills of Lading, Maersk also has claims for the expenses which were incurred in the retrieval, disposal, and transshipment of the Containers. These expenses total $108,813.

19. In addition to the principal claims, Unifeeder also is liable for the legal costs paid by Maersk to the cargo claimants in any settlement as well as the legal costs incurred or to be incurred in the defense of the Claims. Maersk reasonably estimates these legal costs to be at least $200,000.

### Allegations Concerning Garnishees

20. **DnB NOR Bank ASA** is one of Unifeeder's banks, at which Unifeeder regularly keeps accounts and maintains an agent for service of process in and by information and belief does regular business in this District.

21. **CMA CGM Logistics USA LLC, Hapag-Lloyd (America) LLC, Hamburg Sud North America, Inc.. "K" LINE America, Inc., and Ocean Network Express (North America) Inc**.:   CMA CGM Logistics USA LLC, Hapag-Lloyd (America) LLC, Hamburg Sud North America, Inc., "K" LINE America, Inc., and Ocean Network Express (North America) Inc. are the United States agents and operating companies for international container shipping lines, with resident agents in this District.  Unifeeder by information and belief regularly provides container feeder ocean transportation for these entities at ports throughout Europe and the Middle East.  Consequently Maersk reasonably believes that each of these Garnishees, each of which has a resident agent in this District, may owe accounts to Unifeeder.

### Count I – Breach of Maritime Contract and Bailment

22. Maersk incorporates the above paragraphs as if fully set forth herein.

23. Unifeeder breached its maritime contracts with Maersk and failed to deliver the Containers breaching Maersk's bailment of the cargo to Unifeeder, as set out above, specifically, by accepting the Containers but failing to deliver it as Maersk's contracts, including the Global Agreement, with Unifeeder require.

24. Unifeeder further has breached the Global Agreement by failing and refusing to indemnify and defend Maersk against the Cargo Claims, as set out above.

25. Maersk therefore demands security for its damages, claims and related costs including attorney's fees and arbitrators' fees for Unifeeder's breach of contract, as set out more

fully below.

## Count II – Maritime Negligence

26. Maersk incorporates the above paragraphs as if fully set forth herein.

27. In the alternative to Count I, Unifeeder owed a duty to Maersk not to lose the Containers. Unifeeder breached that duty as set out above. Maersk has suffered damage and will suffer further damage and expenses because of the loss of the Containers and the resulting Cargo Claims.

28. Maersk therefore demands security for its claims and related costs including attorneys fees which are the reasonably foreseeable result of Unifeeder's negligence, as set out more fully above.

## Count III: Maritime Attachment and Garnishment (Rule B)

29. Maersk incorporates the above paragraphs as if specifically set forth herein.

30. Maersk seeks issue of process of maritime attachment so that it may obtain security for the claims which Maersk will bring or has brought in the High Court, London pursuant to the Global Agreement for the amount due to it as further detailed in the demand, herein.

31. No security for Maersk's claims has been posted by Unifeeder or anyone acting on Unifeeder's behalf to date.

32. Unifeeder cannot be found within this District within the meaning of Rule B, but is believed to have, or will have during the pendency of this action, property and/or assets in this jurisdiction consisting of cash, funds, freight, hire, and/or credits in the hands of Garnishees in this District.

## Prayer for Relief

WHEREFORE, Maersk prays:

A. That in response to Counts I and II, process of maritime attachment be issued pursuant to Supplemental Maritime Rule B to garnish and attach property of Unifeeder in the principal amount of at least **$2,527,978.72** as detailed above;

B. That in response to Count III, since Unifeeder cannot be found within this District pursuant to Supplemental Rule B, this Court issue an Order directing the Clerk to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all of Unifeeder's tangible or intangible property or any other funds held by any Garnishee up to the amount of at least the amount demanded herein to secure Maersk' claims, and that all persons claiming any interest in the same be cited to appear and, pursuant to Supplemental Rule B, answer the matters alleged in the Verified Complaint;

C. That as provided in Supplemental Rule B, that such person over 18 years of age be appointed as moved for herein pursuant to Supplemental Rule B and Fed. R. Civ. P. 4(c) to serve the garnishment writs as issued by this Court;

D. That pursuant to Supplemental Rule B(a)(b) the Clerk issue supplemental process enforcing this Court's Order to issue the Rule B writs upon application without further Court order;

E. That upon Maersk being fully secured for the amounts as set out in this Verified Complaint, this Court stay this action pending result or settlement in the referred proceedings before the High Court, London, and that this Court on result in favor of Maersk recognize and

enforce the award against the security held by this Court's Rule B writs issued by this Court and served each Garnishee, to the full amount of security held; and

  F. That this Court award Maersk such other and further relief that this Court deems just and proper.

Dated:  November 30, 2022.

                */s/ Scott Wiehle*
                Scott Wiehle
                State Bar No. 24043991
                scott.wiehle@kellyhart.com
                Joseph D. Austin
                State Bar No. 24101470
                joseph.austin@kellyhart.com
                KELLY HART & HALLMAN, LLP
                201 Main Street, Suite 2500
                Fort Worth, Texas 76102
                Telephone: (817) 332-2500
                Telecopy: (817) 878-9280

                J. Stephen Simms
                (*pro hac vice forthcoming*)
                jssimms@simmsshowers.com
                Simms Showers LLP
                201 International Circle, Suite 230
                Baltimore, Maryland 21030
                Telephone: (410) 783-5795
                Facsimile: (410) 510-1789

                COUNSEL FOR MAERSK

## **VERIFICATION**

I am a Principal of the law firm Simms Showers LLP, counsel to Maersk.

The facts alleged in the foregoing complaint are true and correct to the best of my knowledge and information based upon the records of Maersk made available to me by Maersk. Maersk's authorized officers are not readily available in this District to make verifications on Maersk's behalf. I am authorized to make this verification on Maersk's behalf.

I further certify that, pursuant to Supplemental Rule B, I caused a search to be made of electronic records and Directory Assistance for addresses and telephone numbers in this District. I also searched the records of the Texas Secretary of State. There is no record of any general or resident agent authorized to accept service of process for defendant Unifeeder in this District.

> Pursuant to 28 U.S.C. § 1746(1), I solemnly declare under penalty of perjury that the foregoing is true and correct.
>
> Executed on November 30, 2022.
>
> /s/ J. Stephen Simms
> J. Stephen Simms
> Simms Showers LLP
> 201 International Circle, Suite 230
> Baltimore, Maryland 21030
> Tel: 410-783-5795
> Email: jssimms@simmsshowers.com